UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Darrell Day,

      Petitioner,

      v.                                    Civil Action No. 2:15-cv-234-cr-jmc

Lisa Menard, Commissioner of the
Vermont Department of Corrections,

      Respondent.

## REPORT AND RECOMMENDATION
(Docs. 1, 12)

      Petitioner Darrell Day, a prisoner proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his June 2011 state conviction for five crimes, including a third offense for driving under the influence (DUI). (Doc. 1 at 1–2; Doc. 6-1 at 5.) Day is currently housed at the North Lake Correctional Facility in Baldwin, Michigan, where he is serving a sentence of 20 years and six months to 41 years. (Doc. 1 at 1; Doc. 6-1 at 7–8; Doc. 20.)

      Pending before the Court is a Motion for Summary Judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, filed by Defendant Lisa Menard, the Commissioner of the Vermont Department of Corrections, seeking dismissal of Day's Petition. (Doc. 12.) Day opposes the Motion and asks the Court to grant summary judgment in his favor and vacate his sentence. (Doc. 27.) For the reasons explained

below, I recommend GRANTING Menard's Motion and DISMISSING Day's Petition insofar as it contains claims not previously dismissed by the Court's November 2016 Opinion and Order (*see* Doc. 23; *see also* Doc. 22).

## Background

### I.    Procedural History

In November 2015, Day filed his Petition in this matter, seeking to vacate his state conviction and sentence.  (Doc. 1.)  In May 2016, Menard filed the pending Motion for Summary Judgment, requesting that Day's Petition be dismissed with prejudice. (Doc. 12.)  Menard asserts that there are no material facts in dispute and she is entitled to judgment as a matter of law.  (*Id.*)  About a month after Menard's Motion was filed, the Court issued an Order advising that Day's Petition "contains a mix of exhausted and unexhausted claims" (Doc. 15 at 2), including the following unexhausted ineffective assistance of counsel claims:

> that [Day's] [trial] attorney, Frederick Bragdon, was ineffective under the Sixth Amendment, in the following ways: (1) Bragdon failed to file a Motion to Dismiss "for lack of Prima Facie Case challenging the required 'element of specific intent' on all of the assault offenses due to intoxication, which would negate the required element of 'knowledge'"; (2) Bragdon also failed to file a "Motion in Limine To Elect Offenses for Trial due to the multiplicity of the same element offenses"; and (3) Bragdon coerced Day's plea of guilty "in order to conceal his unpreparedness for trial"

(*id.* at 5 (citations omitted) (quoting Doc. 1 at 15–17)).  Given these unexhausted claims, and finding that "if the Court were to dismiss the entire Petition without prejudice, Day would not have time to exhaust his state-court remedies and refile his Petition in this Court," Day was permitted to either withdraw the unexhausted claims from his Petition or

move to stay the Petition and hold it in abeyance pending Day's pursuit of those claims in state court.  (*Id.* at 8.)

Day opted to file a Motion to Stay, arguing that he had good cause for failing to exhaust the relevant ineffective assistance of counsel claims; that the claims are potentially meritorious; and that he did not engage in intentional dilatory litigation tactics in failing to bring the claims earlier.  (Doc. 16 at 1, 4.)  Menard opposed the Motion. (Doc. 18.)  In September 2016, the undersigned Magistrate Judge issued a Report and Recommendation recommending that Day's unexhausted ineffective assistance of counsel claims be dismissed and his request for a stay be denied, on the grounds that Day had neither demonstrated good cause for his failure to exhaust the applicable claims in state court nor established that those claims were potentially meritorious.  (Doc. 22.) Soon thereafter, the Court issued an Opinion and Order adopting the Report and Recommendation, dismissing Day's unexhausted claims, and concluding that Day's exhausted claims "shall remain pending before the Magistrate Judge for further proceedings."  (Doc. 23 at 3.)

The Court then issued a Scheduling Order, advising the parties that "only those claims that were exhausted in state court now remain for the Court's consideration," and that Day "shall file a Response to the pending Motion for Summary Judgment on or before [January 4, 2017] addressing . . . the remaining exhausted claims."  (Doc. 24.) Day subsequently requested an extension of time to file his response, and the request was granted.  (Doc. 26.)  On February 14, Day filed his response, titled "Petitioner's

Response Motion for Summary Judgment," wherein he agrees with Menard that there are no material facts in dispute but asserts that *he*—not Menard—is entitled to judgment as a matter of law. (Doc. 27 at 1.)[1]

## II.    Factual Background

The relevant facts are undisputed and have been summarized before by the parties and several courts. (*See, e.g.*, Docs. 6-2, 6-3, 6-5, 6-9, 6-12, 6-13, 15.) They are nonetheless restated here for ease of reference.

In October 2010, Day was arrested after he drove while intoxicated, crashed into a minivan carrying an adult and three children, and attempted to flee from the police. (Doc. 18-5.) At the time of the arrest, Day had 45 prior convictions, 14 of them felonies, and many involving "assaultive behavior." (Doc. 6-10 at 224; Doc. 6-15 at 28.) Two of Day's prior convictions were for DUI, one in June 1986 and the other in November 1991 (Doc. 27-1 at 1), which made Day's sentence eligible for a habitual offender enhancement under 23 V.S.A. § 1210(d). In June 2011, Day, represented by Attorney Frederick Bragdon, pleaded guilty in the Vermont Superior Court (Bennington Criminal Division) to the following offenses in a written plea agreement: DUI, third offense with a habitual offender enhancement; simple assault; reckless endangerment; attempting to elude a law enforcement officer; and grossly negligent operation of a vehicle. (Doc. 6-1

---

[1]  Day's "Response" to Menard's Motion for Summary Judgment only indirectly responds to Menard's Motion, and instead requests that the Court "grant summary judgment in *his* favor because there [are] no material facts in disput[e], and he is entitled to judgment as a matter of law." (Doc. 27 at 1 (emphasis added).) Thus, the facts are undisputed, and the issue to be decided is how the law applies to those facts, as discussed below.

at 1, 5; Doc. 6-13; Doc. 12-1 at 2; Doc. 27-1 at 1.)  In exchange for the plea, the State agreed to dismiss Day's other felony assault charges, which could have subjected Day to life imprisonment under the habitual offender statute.  *In re Day*, No. 2014–134, 2015 WL 196312, at *1 (Vt. Jan. Term, 2015).  At the hearing to consider Day's guilty plea, the court conducted an extensive plea colloquy, specifically advising Day about how his sentence would be affected by the applicable habitual offender enhancement,[2] and providing a recess to allow Day's counsel to review the relevant law before Day accepted the agreement.  (Doc. 6-13 at 2–3, 9–10.)  *See In re Day*, 2015 WL 196312, at *1.

Approximately three months later, Day moved to withdraw his guilty plea, claiming that the use of his 1986 and 1991 DUI convictions to enhance his pending DUI conviction to a third offense violated the Ex Post Facto Clause of the United States Constitution and 1 V.S.A. § 214.[3]  (Doc. 6-1 at 6, Doc. 6-10 at 184–91.)  The court denied Day's motion, finding "no fair and just reason for a withdrawal of the plea," and noting that the issue of Day's prior convictions "was specifically discussed with [Day], at length, during his plea colloquy[, and Day], who was aware of the [relevant] statutes and discussed them at the change of plea hearing, specifically agreed, at that time, that the State could meet its burden of proof on th[e] issue."  (Doc. 6-10 at 192.)

---

[2]  The court informed Day as follows: "[T]his is being enhanced by a habitual offender enhancement.  And that means that the State is asking the [c]ourt to consider a sentence of up to life in prison . . . ."  (Doc. 6-13 at 10.)  Day stated he understood that.  (*Id.*)  (*See also* Doc. 6-10 at 140.)

[3]  1 V.S.A. § 214 concerns the effect of the amendment or repeal of an act or provision of a statute.  *See, e.g.*, *Sanz v. Douglas Collins Constr.*, 2006 VT 102, ¶ 13, 180 Vt. 619, 623, 910 A.2d 914, 918 (2006) ("[W]e hold that 1 V.S.A. § 214(b)(2) prohibits retroactive application of 21 V.S.A. § 652(b) to injuries that predate its enactment.").

In December 2011, Day was sentenced to a term of 20 years and six months to 41 years' imprisonment. (*Id.* at 229, Doc. 6-15 at 33.) Day immediately appealed, but thereafter withdrew the appeal, instead filing a *pro se* motion for reconsideration of his sentence in April 2012. (Doc. 6-1 at 8–9.) In his motion, Day again alleged that his sentence violated the Ex Post Facto Clause of the United States Constitution, and, more specifically, that he was entitled to be sentenced under the enhancement scheme in effect prior to the 1991 amendment to 23 V.S.A. § 1210(d), discussed in detail below. (Doc. 6-5 at 1.) The court denied Day's motion, and Day appealed. (Doc. 6-1 at 10, Doc. 6-2.)

In December 2012, the Vermont Supreme Court denied Day's appeal on its merits, thereby affirming Day's conviction and sentence. *See State v. Day*, No. 2012–222, 2012 WL 6633576 (Vt. Dec. 13, 2012). (Doc. 6-5 at 2–3.) Day filed a "motion for reargument," contending that his 1991 conviction arose from an arrest that occurred before the 1991 amendment to 23 V.S.A. § 1210(d) became effective, thus violating the Ex Post Facto Clause; but the motion was denied. (Doc. 6-1 at 10.)

While his direct appeal was pending, Day, represented by Attorney Mark Furlan, filed a postconviction relief (PCR) petition in the Vermont Superior Court (Bennington Civil Division), once again arguing that his enhanced sentence violated the Ex Post Facto Clause of the United States Constitution and 1 V.S.A. § 214. (Doc. 6-8 at 1, Doc. 6-10 at 10–30, Doc. 27-1 at 2.) In August 2013, the court granted partial summary judgment to the State regarding Day's Ex Post Facto Clause claim, concluding that the Vermont Supreme Court had already rejected that claim and Day was precluded from raising it

again.  (Doc. 6-10 at 76–77.)  Day then filed an amended PCR petition arguing that his trial counsel's failure to raise and litigate the Ex Post Facto Clause argument constituted ineffective assistance of counsel, that his guilty plea had been entered into involuntarily, and further asserting his Ex Post Facto Clause claims.  (*Id.* at 82–83.)

In April 2014, the court granted the State's motion for summary judgment and dismissed Day's PCR petition with prejudice.  (*Id.* at 3–6.)  Addressing Day's Ex Post Facto Clause/ineffective assistance claim, the court explained: "[Day's] trial counsel could not have been deficient for failing to raise a legal argument that was patently incorrect."  (*Id.* at 6.)  The court also noted that Day's theory attempting to distinguish his case from a related Vermont Supreme Court case, *State v. Delisle*, 171 Vt. 128, 758 A.2d 790 (2000), amounted to "speculative hopefulness, not an analysis proceeding from the statutory language or case law."  (Doc. 6-10 at 5.)

Day appealed the trial court's judgment, and in January 2015, the Vermont Supreme Court affirmed the denial of Day's PCR petition.  (Doc. 6-12.)  *See In re Day*, 2015 WL 196312.  Citing its earlier decision, and noting the trial court's determination that Day's Ex Post Facto Clause arguments were barred by the doctrine of res judicata, the Supreme Court found that Day was precluded from relitigating his Ex Post Facto Clause arguments.  *Id.* at *2.  The court also reiterated the trial court's explanation that "[Day's] trial counsel cannot be considered to have rendered ineffective assistance for failing to raise legal arguments that have been conclusively determined to be incorrect." *Id.* at *3.

7

### III.    Day's Claims and Law Governing His State Sentence

The claims remaining in Day's Petition after this Court's November 2016 Opinion and Order dismissing the unexhausted claims (Doc. 23; *see* Doc. 22), are: (1) that Day's sentence for a DUI third offense violated the Ex Post Facto Clause of the United States Constitution (*see* Doc. 1 at 5–11); (2) that the trial court and the Vermont Supreme Court violated Day's constitutional right to due process by failing to correctly apply state and federal laws, instead applying them in a manner that "is generally offensive to the practice of Judicial fairness" (*id.* at 13; *see also id.* at 11–15); and (3) that Day's trial attorney provided ineffective assistance of counsel in violation of the Sixth Amendment of the United States Constitution by failing to raise the Ex Post Facto Clause claim, failing to properly advise Day with respect to his guilty plea, and failing to assist Day in withdrawing his guilty plea (*id.* at 15–18).  Each of these arguments focuses on the effect of Day's November 1991 DUI conviction on his sentence for his third and most recent DUI conviction in October 2010.  Day asserts that when he was arrested in April 1991 for DUI under 23 V.S.A. § 1201, "he had a substantial right to forgiveness under the statute in effect [at that time]."[4]  (*Id.* at 7.)  He further claims that "use of the 1991 amended version of [23 V.S.A. § 1210] to determine a third offense of DUI in conjunction with his offense committed in April of 1991 violates the Ex Post Facto Clause."  (*Id.* at 6.)  Stated differently, Day argues that "[t]he 1991 amendment of [23 V.S.A. § 1210(d)] acted

---

[4] For ease of reading, the undersigned has not duplicated the all-caps style used by Day in his Petition, as it does not appear to have been used for emphasis.  (*See, e.g.*, Doc. 1 at 6, 7.)

retroactively to [his] April 4, 1991 offense of DUI and disadvantaged him in doing so." (*Id.* at 10.)  An understanding of this argument requires a review of the history of the relevant Vermont statutes.

Prior to July 1, 1991, 23 V.S.A. § 1210(d) provided that, in order to be sentenced as a second offender for DUI in violation of 23 V.S.A. § 1201, a defendant had to have been convicted of DUI once within five years of his current conviction; and, in order to be sentenced as a third offender, the defendant had to have been convicted of DUI twice within 15 years of his current conviction.  *Delisle*, 171 Vt. at 133 (citing 23 V.S.A. § 1210(d) (1987), amended by 1991, No. 55, § 9).  On July 1, 1991, the Legislature amended § 1210(d) to eliminate the five-year and 15-year forgiveness periods, so that prior convictions are no longer excluded from consideration based on their date of commission.  *Id.*  But the 1991 amendment added a "savings clause" providing that "the 15-year forgiveness period used to determine third convictions shall be considered a right [that] has accrued to the operator if the *prior convictions* occurred at any time prior to July 1, 1991."  *Id.* at 133–34 (quoting 1991, No. 55, § 19 (4), (5)) (alteration in original).

The Vermont Supreme Court construed this amended statute in *Delisle*, and found that the 15-year forgiveness period applied only if "*both* prior *convictions* occurred before 1991."[5]  *Id.* at 134; *see also State v. LeBlanc*, 171 Vt. 88, 93, 759 A.2d 991, 994

---

[5]  The court in *Delisle* reasoned: "If the Legislature intended for the [15]-year forgiveness period to apply when only one prior conviction occurred before 1991, it knew how to so specify."  *Id.* at 134 (internal quotation marks omitted).

(2000).[6]  As the Vermont Supreme Court explained in *State v. Day*, 2012 WL 6633576, at *1, those facts do not exist here.[7]  Rather, Day's enhanced DUI sentence is based on one prior conviction that occurred *before* the July 1991 statutory amendment (in June 1986) and a second prior conviction that occurred *after* the amendment (in November 1991).  *Id.* at *1–3.  Given these facts, the court in *State v. Day* found that Day's enhanced DUI sentence was "perfectly consistent with the statutory scheme as construed in *Delisle*."  *Id.* at *2.  Moreover, the court found no constitutional violation, stating: "[I]t is well settled that a conviction which occurred prior to the enactment of a statute providing for increased punishment upon a subsequent conviction may be used for enhancement purposes under that statute, and that such usage is not unconstitutional as being an ex post facto application of the statute."  *Id.* (quoting *Vasquez v. State*, 477 S.W.2d 629, 632 (Tex. Crim. App. 1972)) (citing *City of Norton v. Hurt*, 275 Kan. 521, 523, 66 P.3d 870, 872 (Kan. 2003) (holding that application of enhancement statute that eliminated grace period for DUI convictions over five years old did not violate Ex Post Facto Clause because it "did not operate retroactively to increase the penalty for [the

---

[6]  In both *Delisle* and *LeBlanc*, the court repeatedly referred to prior convictions that occurred "before 1991," rather than referencing the particular month and day—July 1—when the relevant amendment went into effect.  This is because in those cases, the month and day of the change in law was not relevant, given that the prior convictions occurred in 1983 and 1992 in *Delisle*, 171 Vt. at 128, and in 1981, 1982, 1983, and 1995 in *LeBlanc*, 171 Vt. at 89.  Here, however, the month of the amendment is important, given that Day's later prior conviction occurred in November 1991 and thus *after the July 1, 1991 amendment*.

[7]  Nor did those facts exist in *Delisle*.  The court in that case stated: "[B]ecause only one of defendant's prior convictions occurred before 1991, he has no right to the [15]-year forgiveness period."  *Delisle*, 171 Vt. at 134.

10

defendant's] prior DUI offense," but instead, "increased the penalty for the second violation only")).

**Analysis**

## I.     Standard of Review

### A.     Summary Judgment

Courts may decide summary judgment motions like Menard's in the context of a habeas corpus petition. *See Whitaker v. Meachum*, 123 F.3d 714, 716 n.2 (2d Cir. 1997) ("A district court ruling upon a petition for the writ of habeas corpus may hear motions for summary judgment, as in civil litigation." (citing Rules Governing § 2254 Cases, Rule 11)). In a summary judgment motion, the burden is on the moving party—Menard here—to establish that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Rubens v. Mason*, 527 F.3d 252, 254 (2d Cir. 2008) (quoting Fed. R. Civ. P. 56(c)) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Once the moving party has met this burden, in order to defeat the motion, the nonmoving party—Day here—must "set forth specific facts showing that there is a genuine issue for trial." *Rubens*, 527 F.3d at 254 (quoting Fed. R. Civ. P. 56(e)). When reviewing a motion for summary judgment, courts must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Id*. (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Nonetheless, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586 (1986)), and he "cannot defeat summary judgment by relying on the allegations in his complaint, conclusory statements, or mere assertions that affidavits supporting the motion are not credible," *Hamlett v. Srivastava*, 496 F. Supp. 2d 325, 328 (S.D.N.Y. 2007) (citing *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996)).

**B.     Antiterrorism and Effective Death Penalty Act (AEDPA)**

Day's Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which applies to petitions filed by incarcerated state court defendants seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Under this statute, a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000). "[C]learly established Federal law" "refers to the holdings, as opposed to the dicta," of the Supreme Court's decisions "as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). And a state-court decision is "contrary to" federal law if the state court "arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law," or decides a case differently than the Supreme Court on "materially indistinguishable" facts. *Williams*, 529 U.S. at 405. Relief is appropriate under the "unreasonable application" clause of § 2254(d)(1) "if the state court correctly identifies

12

the governing legal principle from [the Supreme Court's] decisions but unreasonably

applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

Federal courts considering applications brought under § 2254 must give the state

court's adjudication "a high degree of deference," *Yung v. Walker*, 341 F.3d 104, 109 (2d

Cir. 2002) (citing *Brown v. Artuz*, 283 F.3d 492, 497 (2d Cir. 2002)), and the state court's

"determination of . . . factual issue[s] . . . shall be presumed to be correct," 28 U.S.C.

§ 2254(e)(1); *see Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (standard under § 2254

is "difficult to meet" and "highly deferential . . . for evaluating state-court rulings, . . .

demand[ing] that state-court decisions be given the benefit of the doubt" (internal

quotation marks omitted)). The applicant has the burden of rebutting this presumption of

the state court's correctness by "clear and convincing evidence." *Yung*, 341 F.3d at 109.

A state court's decision adjudicated on the merits and based on a factual

determination "will not be overturned on factual grounds unless objectively unreasonable

in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*,

537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(d)(2)). Even where a state court does

not explain its decision, the petitioner still bears the burden of showing that there was "no

reasonable basis" for the state court to deny relief. *Harrington v. Richter*, 131 S. Ct. 770,

784 (2011). In other words, a federal court may not issue a writ of habeas corpus "simply

because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly. Rather, that

application *must also be unreasonable*." *Williams*, 529 U.S. at 411 (emphasis added); *see*

*Carmichael v. Chappius*, 848 F.3d 536, 2017 WL 655423, at *6 (2d Cir. 2017).

## II.    Ex Post Facto Clause Claim

As discussed above, Day claims that the sentence imposed for a third DUI offense violated the Ex Post Facto Clause because, "when he was arrested for violation of V.S.A. title 23 § 1201 DUI[,] . . . he had a substantial right to forgiveness under the statute in effect when he committed the offense."  (Doc. 1 at 7.)  Menard argues, however, that the Vermont Supreme Court's rejection of Day's Ex Post Facto claim was neither contrary to nor an unreasonable application of clearly established federal law.  (Doc. 12 at 8–9.)

The United States Constitution prohibits federal and state governments from enacting any "ex post facto Law."  Art. I, § 9, cl. 3; Art. I, § 10.  In an early Supreme Court case, Justice Chase described the following kinds of legislation as prohibited under the Constitution's Ex Post Facto Clause:

> 1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. *Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed*. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

*Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390 (1798) (emphasis added).  Justice Chase explained that the reason for the prohibition of ex post facto legislation was to assure that federal and state legislatures were restrained from enacting arbitrary or vindictive legislation.  *Id.* at 389.  Courts have long recognized that "central to the *ex post facto* prohibition is a concern for 'the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was

consummated.'" *Miller v. Florida*, 482 U.S. 423, 430, (1987) (quoting *Weaver v. Graham*, 450 U.S. 24, 30 (1981)).

"[T]o fall within the *ex post facto* prohibition, two critical elements must be present: first, the law 'must be retrospective, that is, it must apply to events occurring before its enactment'; and second, 'it must disadvantage the offender affected by it.'" *Miller*, 482 U.S. at 430 (quoting *Weaver*, 450 U.S. at 29); *see United States v. Kilkenny*, 493 F.3d 122, 126 (2d Cir. 2007) ("[T]he *Ex Post Facto* Clause enshrines in the Constitution a basic presumption of our law, that is, legislation in the criminal law is not to be applied retroactively." (internal quotation marks omitted)).  The third category of ex post facto laws described by Justice Chase above—those that "change[] the punishment, and inflict[] a greater punishment[] than the law annexed to the crime[] when committed"—is at issue here.  *Calder*, 3 U.S. at 390; *see Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001) (Ex Post Facto Clause applies to legislative action that "retroactively punishes as a crime an act previously committed, which was innocent when done" (internal quotation marks omitted)).  The Supreme Court has held that the relevant inquiry for determining whether a law "inflicts a greater punishment," is whether the "retroactive application of the change in [the] law created 'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'"  *Garner v. Jones*, 529 U.S. 244, 250 (2000) (quoting *California Dep't of Corr. v. Morales*, 514 U.S. 499, 509 (1995)).

Courts have long held that there is no ex post facto violation when, as here, a recidivist sentencing statute authorizes consideration of convictions that predate

enactment of the statute, so long as the crime for which the sentence is imposed occurs after enactment of the statute. *See People v. Baker*, 447 N.Y.S. 2d 223, 225 (Sup. Ct. 1982) ("The constitutionality of enhanced punishment or recidivist statutes has been continuously upheld by the United States Supreme Court."). The Supreme Court directly addressed this issue in *Gryger v. Burke*, 334 U.S. 728, 732 (1948), and found that a sentence does not violate the United States Constitution's Ex Post Facto Clause, even where the enhancing law did not exist until after the defendant committed one of the predicate felonies, so long as the defendant committed the sentencing felony after the enhancing law took effect. *See also Covington v. Sullivan*, 823 F.2d 37, 39 (2d Cir. 1987) ("*Gryger* recognized the authority of a state to enact an enhanced penalty for future conduct preceded by a criminal conviction obtained prior to enactment of the enhanced penalty."). Applied here, because Day committed the crime that gave rise to the challenged sentence in 2010, years after the 1991 amendment to 23 V.S.A. § 1210(d) took effect, his sentence does not violate the Ex Post Facto Clause.

> In rejecting the petitioner's claim in *Gryger*, the Supreme Court explained:

> Nor do we think the fact that one of the convictions that entered into the calculations by which petitioner became a fourth offender occurred before the Act was passed, makes the Act invalidly retroactive or subjects the petitioner to double jeopardy. *The sentence as a fourth offender or habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.*

*Gryger*, 334 U.S. 732 (emphasis added). Stated differently, "a sentence under a second felony or habitual criminal statute does not constitute punishment for the prior conviction, but rather punishment for the crime then being considered." *Baker*, 447

N.Y.S. 2d at 225 ("[T]he punishment mandated by the recidivist statutes here in issue[] is punishment for the crimes for which defendant now stands convicted.  They in no way affect the punishment for the crimes for which defendant was convicted in 1973 and 1976.").  It is the same here: the 1991 amendment to 23 V.S.A. § 1210(d) does not punish Day for his prior 1986 and 1991 DUIs, but rather, increases the punishment for his current 2010 DUI.

In *Parke v. Raley*, 506 U.S. 20, 26 (1992), the Supreme Court noted that "[s]tatutes that punish recidivists more severely than first offenders have a long tradition in this country that dates back to colonial times."  The Court explained that states have a "valid interest in deterring and segregating habitual criminals," and that "a charge under a recidivism statute does not state a separate offense, but goes to punishment only."  *Id.* at 27.  The Court continued: "And we have repeatedly upheld recidivism statutes against contentions that they violate constitutional strictures dealing with double jeopardy, *ex post facto* laws, cruel and unusual punishment, due process, equal protection, and privileges and immunities."  *Id.* (internal quotation marks omitted); *see also United States v. Rodriquez*, 553 U.S. 377, 385–86 (2008) ("When a defendant is given a higher sentence under a recidivism statute[,] . . . 100% of the punishment is for the offense of conviction.  None is for the prior convictions or the defendant's 'status as a recidivist.'").

Following this precedent, the Vermont Supreme Court held in *State v. Day* that Day's enhanced DUI sentence, which was based on one prior conviction that occurred before the applicable July 1991 statutory amendment (in June 1986) and another that occurred after the amendment (in November 1991), is "perfectly consistent" with the

17

relevant statutory scheme as construed by the Vermont Supreme Court in *Delisle*, and does not violate the Ex Post Facto Clause.[8]  *Day*, 2012 WL 6633576, at *2.  Again, Day's claim is that he was entitled to the statutory forgiveness periods in effect when he committed the 1986 and 1991 DUIs; he contends the relevant date is the date of the offense rather than the date of conviction.  But the law does not support this argument.  On similar facts, the court in *Delisle*, 171 Vt. at 134, held: "because only one of defendant's prior convictions occurred before 1991, he has no right to the [15]-year forgiveness period [of 23 V.S.A. § 1210(d)]."  The Vermont Supreme Court similarly held in *LeBlanc*, 171 Vt. at 93: "after the 1991 amendment [to 23 V.S.A. § 1210(d)], defendants who had two DUI convictions before 1991 may seek to avail themselves of the [15]-year forgiveness period to determine the penalty when convicted of a third offense.  With that limited exception, there is no longer any forgiveness period for third or subsequent DUI convictions."

Thus, the Vermont Supreme Court properly applied United States Supreme Court precedent in rejecting Day's Ex Post Facto Clause claim.  In his Response, Day cites to cases from jurisdictions other than the Second Circuit that address statutes other than the one at issue here.  (*See, e.g.*, Doc. 27 at 8 (citing *United States v. Parriett*, 974 F.2d 523,

---

[8]  Day and his counsel were advised of this application of the law as early as June 2011, when the trial court informed them at the change of plea proceedings that its "interpretation" of 23 V.S.A. § 1210 "with respect to the forgiveness periods on the first/second DWIs" was that "the forgiveness periods apply *only when the convictions themselves happened before the date of July 1st, 1991*.  So, that, Mr. Day, . . . in your case, as far as the second DWI, the conviction was after July 1st, 1991."  (Doc. 6-13 at 2 (emphasis added).)  The court reiterated later in the proceeding: "[B]ecause you have two previous convictions[,] . . . and *the second of those convictions occurred after the July 1st, 1991 date*, . . . the [c]ourt would instruct a jury that . . . they could find that this could be a fin[e]d offense."  (*Id.* at 3 (emphasis added).)

525 (4th Cir. 1992).)  Day's reliance on these cases is misguided, however, given that, as

discussed above, the Vermont Supreme Court and this Court have directly addressed the

statute at issue here, *see Day*, 2012 WL 6633576, at *2; *Delisle*, 171 Vt. at 134; *LeBlanc*,

171 Vt. at 93; and the Second Circuit and United States Supreme Court have addressed

statutes like the one at issue here that punish recidivists more severely than first

offenders, *see Gryger*, 334 U.S. at 732; *Parke*, 506 U.S. at 26–27; *Covington*, 823 F.2d

at 39.  These cases compel a rejection of Day's Ex Post Facto Clause claim.

## III.    Deprivation of Due Process Claim

Next, Day claims he was denied the requisite "Due Process of Law" provided for

in the Fifth and Fourteenth Amendments of the United States Constitution and the

Fourteenth Amendment of the Vermont Constitution.  (Doc. 1 at 11.)  This argument

mainly repeats Day's Ex Post Facto Clause argument (*see, e.g.*, *id.* at 13 ("the forgiveness

period [of 23 U.S.C. § 1210] must apply [here,] . . . [or] it runs astray [of] State and

Federal Statute[s] and is generally offensive to the practice of Judicial fairness")), which

fails for the reasons explained above.

Day further claims that the trial court's denial of and refusal to hear three pretrial

motions that he filed *pro se*, violated his rights under Article 10 of the Vermont

Constitution (*see id.* at 15 ("At the very least, the Court should have inquired as to why

[Day] found it necessary to file pro[] se motions [while represented by counsel.]")); and

that the Vermont Supreme Court failed to properly apply 1 V.S.A. § 214, which relates to

the effect of the amendment or repeal of an act or statute (*see* Note 3, above) (*see* Doc. 1

at 12).  But the Vermont Supreme Court already properly addressed and dismissed the

latter assertion, stating: "[Day's] one-paragraph argument claiming a violation of 1 V.S.A § 214 must fail.  That argument is based on the incorrect premise that the savings clause in the 1991 amendment [to 23 V.S.A. § 1201] secured him a right at the moment he committed the offense.  The plain language of that clause indicates otherwise."  *In re Day*, 2015 WL 196312, at *2 n*.  Moreover, as Menard correctly points out (*see* Doc. 12 at 14), federal habeas relief is not available to retry issues of state law, *see Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); and a habeas petitioner may not convert a state law issue into a federal one merely by asserting a due process violation, *see Swarthout v. Cooke*, 562 U.S. 216, 222 (2011) ("we have long recognized that a mere error of state law is not a denial of due process" (internal quotation marks omitted)); *Patterson v. Travis*, 338 F. App'x 21, 24 (2d Cir. 2009) ("The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but the fundamental elements of fairness . . . ." (alterations in original) (internal quotation marks omitted)).

Therefore, Day's due process claims—which largely reflect his misunderstanding of or disagreement with the Vermont Supreme Court's interpretation of Vermont law— do not present a federal question and cannot be a basis for habeas relief.

## IV.     Ineffective Assistance of Counsel Claim

Finally, Day claims that his Sixth Amendment right to effective assistance of counsel was violated due to his trial counsel's failure to raise an Ex Post Facto Clause claim in the trial court.  (Doc. 1 at 15–18.)  Moreover, Day asserts that his counsel failed

to assist in his plea withdrawal, which left the ex post facto issue unpreserved for appeal; and failed to advise him of the ex post facto defense, resulting in his involuntarily entering a guilty plea.[9]  (*Id.*)  As Menard argues in her Motion for Summary Judgment (*see* Doc. 12 at 19), however, counsel's representation of Day was not constitutionally ineffective, and thus there was no constitutional violation.

Ineffective assistance of counsel claims are governed by the Supreme Court's holding in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Williams*, 529 U.S. at 390.  This landmark case constitutes the "clearly established Federal law" underlying Day's ineffective assistance of counsel claim.  28 U.S.C. § 2254(d)(1).  In *Strickland*, the Court established a two-prong test to determine whether a defendant's Sixth Amendment right to effective assistance of counsel has been violated.  First, under *Strickland's* "performance" prong, a petitioner must show that trial counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms."  *Strickland*, 466 U.S. at 688.  "Constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690).  "A fair assessment of attorney performance

---

[9]  As stated above, the Court has dismissed Day's unexhausted ineffective assistance of counsel claims, finding that Day neither demonstrated good cause for his failure to exhaust them in state court, nor established that they were potentially meritorious.  (*See* Doc. 22 at 5–19, Doc. 23.)  Given their dismissal, these claims—which assert that counsel failed to file certain pretrial motions and coerced Day's guilty plea—are not addressed herein, nor is the portion of Menard's Motion for Summary Judgment that addresses them (*see* Doc. 12 at 17).

requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted).

Thus, courts "must apply a heavy measure of deference to counsel's judgments," and "will not normally fault counsel for foregoing a potentially fruitful course of conduct if that choice also entails a significant potential downside." *Greiner*, 417 F.3d at 319 (internal quotation marks omitted). And, "[a] lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision, and strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* (citation and internal quotation marks omitted).

Second, under *Strickland's* "prejudice" prong, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding"; rather, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 693–94; *see Lynn v. Bliden*, 443 F.3d 238,

248 (2d Cir. 2006). Additionally, the Second Circuit "requires some objective evidence other than defendant's assertions to establish prejudice." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003) (citing *United States v. Gordon*, 156 F.3d 376, 380–81 (2d Cir. 1998) (per curiam)).

The two-prong test set forth in *Strickland* for evaluating ineffective assistance of counsel claims applies to claims raised by defendants like Day who have been convicted pursuant to a guilty plea. *See Hill v. Lockhart*, 474 U.S. 52, 57–58 (1985); *United States v. Coffin*, 76 F.3d 494, 498 (2d Cir. 1996). In these cases, the defendant must first show "that 'counsel's representation fell below an objective standard of reasonableness,'" *Coffin*, 76 F.3d at 498 (quoting *Strickland*, 466 U.S. at 687–88), and then "that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial,'" *id.* (quoting *Hill*, 474 U.S. at 59). Thus, the prejudice inquiry regarding an ineffective assistance claim in a guilty plea case "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process," *Hill*, 474 U.S. at 59, rather than on whether "the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694.

Usually, "the only advantage of going to trial over pleading guilty is the possibility of acquittal or conviction of lesser charges." *Cuevas v. United States*, Nos. 10 Civ. 5959(PAE)(GWG), 98 Cr. 1053(PAE), 2012 WL 3525425, at *9 (S.D.N.Y. Aug. 16, 2012), *report and recommendation adopted*, 2013 WL 655082 (S.D.N.Y. Feb. 22, 2013). Therefore, where a petitioner claims he would have gone to trial rather than plead guilty, he must provide:

> some basis for concluding that the chance of acquittal or conviction of lesser charges was sufficiently high that the petitioner would have rationally chosen to take the risk of conviction and a longer sentence that accompanies a trial rather than accept the certainty of conviction and a generally lesser sentence that is entailed by a guilty plea.

*Id.* Where there is "extensive evidence of his guilt," the petitioner must articulate a convincing basis on which he would have foregone "the substantial benefit resulting from his plea" and risked a harsher sentence at trial. *Boakye v. United States*, No. 09 Civ. 8217, 2010 WL 1645055, at *5–6 (S.D.N.Y. Apr. 22, 2010); *see also United States v. Arteca*, 411 F.3d 315, 321 (2d Cir. 2005) (no prejudice where defendant (a) was aware plea agreement's sentencing estimate was not binding; (b) received benefits from plea deal; and (c) did not provide "any persuasive reason for doubting the strength of the government's case against him").

Establishing a claim for ineffective assistance of counsel is a "heavy burden" that, in the context of a § 2254 petition, is "enhanced by the added hurdle posed by the highly deferential review accorded state court adjudications under the . . . [AEDPA]." *Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir. 2003); *see Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) ("When a state prisoner asks a federal court to set aside a sentence due to ineffective assistance of counsel during plea bargaining, our cases require that the federal court use a doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt." (internal quotation marks omitted)).  The petitioner must show the federal habeas court not only that the state-court decision applied *Strickland* incorrectly, but also that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002);

24

*see Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) ("When a federal court reviews a state[-]court decision under § 2254, [t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." (alteration in original) (internal quotation marks omitted)).  Moreover, "because the *Strickland* standard is a general [one], a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Day's remaining ineffective assistance of counsel claims are all premised on his Ex Post Facto Clause argument, discussed above.[10]  Because counsel cannot be considered "ineffective" for failing to raise a meritless argument, the claims necessarily fail.  The Vermont Supreme Court succinctly stated this point in January 2015, quoting its own earlier decision: "[Day's] claim of ineffective assistance of counsel [i]s unavailing because his 'trial counsel could not have been deficient for failing to raise a legal argument that was patently incorrect.'"  *In re Day*, 2015 WL 196312, at *2.  The court also restated its earlier finding that "[Day]'s theory attempting to distinguish his

---

[10]  As noted above, the following claims have already been disposed of in the Court's September 2016 Report and Recommendation (Doc. 22) and November 2016 Opinion and Order (Doc. 23), and thus are not addressed here: (1) Day's claim that trial counsel failed to file a motion to dismiss based on a lack of the element of specific intent on the assault offenses due to Day's intoxication; (2) Day's claim that trial counsel failed to file a motion in limine to elect offenses for trial due to the multiplicity of the same element offenses; and (3) Day's claim that trial counsel coerced Day's guilty plea.  (*See* Doc. 1 at 15–17; Doc. 15 at 5; Doc. 22 at 12–17.)  The Court has also disposed of Day's apparent claim that his PCR counsel was ineffective for "drop[ping] the ball" on Day's ineffective assistance of counsel claim regarding trial counsel, and for "los[ing] sight of the fact that trial counsel coerced [Day] into a guilty plea with erroneous information."  (Doc. 16 at 4; *see* Doc. 22 at 18–19.)

circumstances from those in *Delisle* was so novel that not presenting the theory could not, as a matter of law, be considered ineffective assistance of counsel." *Id.* (citing *State v. Kirby*, 2012 VT 72, ¶ 13, 192 Vt. 640 (mem.) (stating that trial counsel cannot be found to have rendered ineffective assistance for failing to raise untested or unsettled theory of law)). The Court cannot fault Day's trial counsel for not raising a claim that has been unqualifiedly rejected by a criminal trial court, a civil trial court, and the Vermont Supreme Court. Moreover, Day cannot show prejudice: had he not pleaded guilty, he would have risked a higher sentence after trial, especially considering that, in exchange for the plea, the State had agreed to dismiss Day's other felony assault charges, which could have subjected Day to life imprisonment. *See Day*, 2015 WL 196312, at *1.

Furthermore, as stated in this Court's September 2016 Report and Recommendation, to the extent that Day's ineffective assistance claims relate to trial counsel's alleged deficient representation of him prior to his guilty plea, the plea waived those claims. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *United States v. Torres*, 129 F.3d 710, 715–16 (2d Cir. 1997); *Coffin*, 76 F.3d at 497–98; *Whitehead v. Senkowski*, 943 F.2d 230, 233 (2d Cir. 1991) ("Generally a knowing and voluntary guilty plea precludes federal habeas corpus review of claims relating to constitutional rights at issue prior to the entry of the plea."). In *Tollett*, the United States Supreme Court explained that a knowing and voluntary guilty plea "represents a break in the chain of events which has preceded it in the criminal process," and a defendant "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." 411 U.S. at 267. Thus, after pleading

guilty, the defendant "may only attack the voluntary and intelligent character of the guilty plea." *Id.*; *see Hayes v. Lee*, No. 11-CV-1365 (KMK)(PED), 2015 WL 5943677, at *8 (S.D.N.Y. Oct. 13, 2015) ("[b]ecause [p]etitioner's plea was knowing and voluntary, [he] cannot assert pre-plea grounds for habeas relief"). Here, there is no evidence that Day's guilty plea was unknowing or involuntary. To the contrary, Day stated in an Affidavit that he "never contested the facts underlying [his] DUI charge and never wanted a jury trial on that charge." (Doc. 6-10 at 134.) Additionally, at the plea hearing, Day acknowledged that he understood the contents of the plea agreement; that he was in fact guilty; and that no one threatened or forced him to plead guilty. (*See* Doc. 6-13 at 5–10.) Therefore, any claims Day raises regarding trial counsel's representation of him prior to entry of his guilty plea lack merit.

## Conclusion

Menard has demonstrated that the Vermont Supreme Court's decisions denying Day relief for the claims alleged in his Petition are not "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law." 22 U.S.C. § 2254(d)(1). For this and the other reasons explained above, I recommend that Menard's Motion for Summary Judgment (Doc. 12) be GRANTED and Day's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1) be DISMISSED.

I further recommend that the Court decline to issue a certificate of appealability, given that I am unable to find that "reasonable jurists could debate whether (or, for that matter, agree that) [Day's] [P]etition should have been resolved in a different manner or that the issues presented [a]re adequate to deserve encouragement to proceed further,"

especially considering the extensive review this case has already received both in state and federal court. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted); *see* 28 U.S.C. § 2253(c)(2) (certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right").

Dated at Burlington, in the District of Vermont, this 4th day of April, 2017.


/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).